IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE DELINQUENCY OF G.G.

No. 1 CA-JV 24-0097
FILED 12-31-2024

---

Appeal from the Superior Court in Mohave County
No.  S8015JV202400042
The Honorable Megan A. McCoy, Judge

**REMANDED**

---

COUNSEL

Harris & Winger P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

Mohave County Public Defender's Office, Kingman
By Jacobo Chavez
*Counsel for Appellee*

---

**OPINION**

---

Presiding Judge Maria Elena Cruz delivered the opinion of the Court, in which Judge Samuel A. Thumma and Judge Andrew M. Jacobs joined.

---

**C R U Z**, Judge:

¶1　　　　G.G. appeals the superior court's order adjudicating him delinquent and imposing standard probation. Because he presents a colorable claim of ineffective assistance of trial counsel, we remand to the superior court for an evidentiary hearing.

## FACTUAL AND PROCEDURAL HISTORY

¶2　　　　Just past midnight on December 15, 2023, a Lake Havasu City police officer was driving south on Acoma Boulevard in a marked police car. When the officer reached the intersection with Palo Verde Boulevard, she stopped at a red light in the left-hand turn lane. At the same intersection, but facing west on Palo Verde Boulevard, she saw two people on a red all-terrain vehicle ("ATV"). Once her signal turned green, the officer made a slow left-hand turn in front of the people on the ATV, watching them carefully. The driver, who she believed was a young male, was wearing a black helmet with no visor.

¶3　　　　After passing the ATV, the officer looked in her rearview mirror and noticed that the ATV had no license plate. She made a U-turn and activated her overhead lights to conduct a traffic stop. Upon seeing the police car turn around, the ATV driver ran the red light and drove into the neighborhood. With lights and siren on, the officer pursued the ATV for about two miles. She ended the pursuit, however, because she was concerned the driver—who had already run three stop signs—would cause an accident.

¶4　　　　Susan (a pseudonym) delivers newspapers in Lake Havasu City. She was on her way to work when she and her husband drove past the police officer pursuing the ATV. She called the police to report that about twelve hours earlier she was cut off and harassed by two people on a similar looking ATV that pulled out from a residence in the general area. Susan reported that the driver of that ATV was wearing a dark-colored helmet with no faceguard and a marijuana leaf printed on the back. But she

had not seen the ATV driver, or the passenger, well enough to identify them.

¶5            Susan provided the police officer with the address where she first saw the ATV.  The officer checked police records and discovered that fifteen-year-old G.G. lived at that address.  The officer next searched online and found a photo on G.G.'s social media that she thought matched the person she saw driving the ATV.

¶6            About a week later, the police officer spoke with G.G. and his father at their home.  G.G. denied driving the ATV involved in the pursuit.  He told the officer he stayed at his friend John's (a pseudonym) house that night.  He also said he was at the hospital with John at noon the day before because John broke his cheekbone in an accident.  When asked, G.G. said he had an ATV at John's house, but it was inoperable.  G.G. described the ATV as mostly white with a little bit of red; his father said the ATV was white and red.

¶7            The officer went to John's house and spoke to his mother.  The mother confirmed that there was an ATV in her backyard but would not let the officer see it.

¶8            In February 2024, the State filed a petition in superior court alleging G.G. (who was fifteen years old in December 2023) was delinquent on three charges:  (1) unlawful flight from pursuing law enforcement vehicle, a class 5 felony, (2) failure to comply with command of law enforcement officer, a class 2 misdemeanor, and (3) reckless driving, a class 2 misdemeanor.

¶9            At the adjudication, the superior court heard testimony from Susan, the officer, and G.G.  The court also considered the officer's dash-cam video of the pursuit.  Although John's mother was present at the hearing and had been disclosed by the defense as a witness, she did not testify because G.G.'s counsel failed to arrange a time for the prosecutor to interview her before the hearing.  After closing arguments, the superior court found the State proved all three counts beyond a reasonable doubt and adjudicated G.G. delinquent.  The court later placed him on standard probation.

¶10           G.G. timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), 12-2101(A)(1).

3

**DISCUSSION**

¶11        G.G. argues that he was denied effective assistance of court-appointed counsel.  Juveniles may raise a claim of ineffective assistance of counsel in an appeal from the superior court.  *See generally Maricopa Cnty. Juv. Action No. JV–511576,* 186 Ariz. 604, 606–07 (App. 1996).  To allege a colorable claim of ineffective assistance of counsel, a juvenile must assert (and be able to demonstrate) that (1) counsel's performance was deficient and (2) the deficient performance resulted in prejudice.  *State v. Anderson*, 257 Ariz. 199, 206, ¶ 27 (2024) (citing cases).  As applicable in superior court, a claim is colorable when the alleged facts, if true, "would *probably* have changed" the delinquency finding or resulting consequences.  *State v. Amaral*, 239 Ariz. 217, 220, ¶ 11 (2016).  "If a colorable claim is asserted, we will remand for fact finding by the juvenile court."  *In re Nicholas L.*, 1 CA-JV 15-0088, 2015 WL 6549545, at *2, ¶ 9 (Ariz. App. Oct. 29, 2015) (mem. decision).

¶12        When considering whether G.G. has made a colorable claim that counsel's performance was deficient, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [juvenile] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. 668, 689 (1984). (citation and internal quotation marks omitted).  The decision as to what witnesses to call for the defense is a question of trial strategy normally left to counsel.  *State v. Lee*, 142 Ariz. 210, 215 (1984).  To overcome this presumption, the juvenile must allege (and be prepared to show) that counsel's performance fell outside the acceptable "range of competence" and failed to meet "an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687–88.

¶13        To make a colorable claim of prejudice, the juvenile must allege (and be prepared to establish) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *JV-511576*, 186 Ariz. at 606 (citations and internal quotation marks omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

¶14        G.G. asserts three claims of ineffective assistance of counsel.  He first argues that his counsel failed to investigate or present two named alibi witnesses "who were present at his delinquency adjudication hearing and who would have unequivocally testified that [G.G.] was in their

presence at the time of the police pursuit." Here, G.G. makes a colorable claim of ineffective assistance of counsel.

¶15        The delinquency turned on the identity of the ATV's driver. G.G.'s defense centered on his alibi—that he was with John and John's mother at the time. G.G. testified, for instance, that he was at the hospital with John and John's mother at about noon because John fell off his motorized bike and fractured his cheekbone. He further testified that, at midnight, he and John were watching a movie while John's mother was with them in the living room asleep. He also testified that although his ATV was at John's house, it did not run and was a different color than the red ATV involved in the pursuit.

¶16        Critical to G.G.'s defense was the testimony of his alibi witnesses. In keeping with this alibi, G.G. disclosed John and John's mother as witnesses. *See* Ariz. R.P. Juv. Ct. 210(b)(2). John's mother also appeared at the adjudication hearing and told the superior court she was a witness. Defense counsel, however, did not have her testify, stating he was unable "to arrange an interview with the prosecutor to give them an opportunity to also do an interview." There is no evidence that the prosecutor objected to this witness. And, even if she had objected, it is likely that the court – in a bench trial – would have granted G.G. a brief continuance to arrange witness interviews. *See State v. Smith*, 140 Ariz. 355, 359 (1984) (holding that it was reversible error to preclude the testimony of an alibi witness who was vital to the defense when the State was aware of the witness's existence before trial and the non-disclosure was not due to bad faith, and that less stringent sanctions, such as granting a continuance, should have been considered). The record contains no indication that G.G.'s counsel made a strategic decision not to call John's mother as a witness, or that her testimony would harm the defense. *Cf. State v. Goswick*, 142 Ariz. 582, 586 (1984) ("There are a number of reasons why an attorney may choose not to call a witness, including a concern that the witness may perjure himself or that his participation in the defense may harm the defendant more than his testimony . . . will aid him.") (citation and internal quotation marks omitted).

¶17        Furthermore, G.G. has made a colorable claim that he was prejudiced. The superior court observed that "the primary issue [in this case] is that of identification." But neither the officer nor Susan was able to see the ATV driver clearly. Instead, the court explained that G.G.'s identification was based on a "process" "in which the links were brought forward, and at the end of each of those steps, [the officer] found the person she saw on the [ATV]." "This was not [] random," the court concluded,

"[t]his was following each thread of potential identity and then seeing someone that matched the description."

**¶18** Here, if John's mother testified that G.G. was with her and John in the hospital at noon on December 14th and with her and John in her home in the early morning on December 15th, there is a reasonable probability that the hearing would have resulted in a different outcome. *See, e.g., Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). This prejudiced G.G. Accordingly, after our review of the record, we conclude that G.G. has raised a colorable claim of ineffective assistance of counsel. *See Anderson*, 257 Ariz. at 206, ¶ 27.

**¶19** Because we remand on G.G.'s first claim, we need not address his remaining claims that his attorney (1) never shared the police videos with him and (2) failed to present to the superior court text messages and medical records that would have shown he was at the hospital when Susan saw an ATV leave his house. Both claims raise evidentiary questions for the superior court to consider on remand.

## CONCLUSION

**¶20** We remand the case to the superior court for an evidentiary hearing on G.G.'s claims that his court-appointed counsel was ineffective and any further proceedings that may be appropriate after that determination.

